**UNITED STATES of America**

**v.**

**Kevin Thomas FORD.**

**Crim. A. No. 6935.**

United States District Court
D. New Hampshire.

Nov. 21, 1969.

David A. Brock, U. S. Atty., Concord, N. H., for plaintiff.

W. Wright Danenbarger, Wiggin, Nourie, Sundeen, Nassikas & Pingree, Manchester, N. H., for defendant.

## OPINION

BOWNES, District Judge.

The defendant is charged with willfull refusal to submit to induction into the Armed Forces of the United States in violation of Title 50 App., United States Code, Section 462. The defendant waived his right to a jury trial. The defendant is found guilty as charged.

## THE FACTS

A careful recital of the facts is necessary because they have an important bearing on the principal defense—that the Government has not proven beyond a reasonable doubt that there was a knowing and willful failure to report for induction. The defendant was classified I–A by Local Draft Board No. 9, Dover, New Hampshire, on October 30, 1967, and was ordered to report for a physical examination on March 18, 1968. The defendant did report on that date and was found physically and mentally qualified, except that a moral waiver was required because of his prior criminal record. The Armed Forces gave such a waiver on May 8, 1968, and on May 13, 1968, the defendant was found acceptable and a statement of acceptability sent to the defendant's local draft board. The defendant was ordered to report for induction on July 16, 1968, at 6:30 A.M., at the office of the local draft board in Dover, New Hampshire. The defendant did not report for induction on July 16th as ordered, but appeared the following day, July 17th, and told the executive secretary that it was not until he had seen a newspaper that he realized that it was the 17th and not the 16th. The executive secretary, after conferring with State Headquarters, advised the defendant to report for induction on August 15, 1968, and he was also notified by mail that his induction date was postponed until August 15th.

On June 17th, the local board received a letter from a Dr. Scherr, dated June 13th, recommending strongly that the defendant not be inducted into the military service because he was deeply disturbed emotionally and was a chronic user of mind-altering drugs. Ex. 1–17. On the same day, June 17th, the board received a letter from Justice McIntire of the Durham District Court, Durham, New Hampshire, stating that, in his opinion, the defendant was definitely unfit for military service. Ex. 1–18. On July 15th, Dr. John H. Perry-Hooker, a psychiatrist, wrote a letter to the board, which was received on July 17th, in which he outlined his conclusions based on a recent psychiatric evaluation of the defendant. Dr. Perry-Hooker gave it as his opinion that "service will aggravate and emphasize the pathological personality factors [of the defendant] and may precipitate serious acting out, with its everpresent [sic] danger to others." Ex. 1–21. The board took no action after receiving these letters and there is nothing in the Selective Service file of the defendant to show that the board considered them at all.

On August 1, 1968, the defendant was arrested in Newmarket, New Hampshire, on the charge of illegal possession of narcotics. On August 12th, the defendant notified his draft board that he was under $500 bail from the Newmarket District Court.

The defendant reported for induction as ordered on August 15th and was found physically qualified, but, because of the three letters in the file raising questions as to his mental stability, he was given a psychiatric examination on August 16th by Dr. Standow, a psychiatrist retained by the Armed Forces Entrance and Examination Station (AFEES). During the course of this examination, the defendant stated, when asked about his problems in detail:

> The issue at this [sic] is the draft, I am afraid, I don't want to go to Viet Nam. I would like a chance to do something with myself first. I want to achieve something first. Ex. 1–27.

AFEES decided that a moral waiver would again be required because of the charges pending against the defendant in the Newmarket District Court, and on August 16th, a request was made by AFEES, directed to the Newmarket District Court, for the criminal record of the defendant. The information received indicates that on August 1st or August 11th, the defendant was found not guilty of the charge of possession of marijuana and was released from all forms of civil restraint.[1] Ex. 1–52. As a result of the information given to AFEES by the District Court of Newmarket, the defendant was found acceptable on August 22nd and was ordered to report for induction on September 18, 1968.

On September 17th, the defendant was admitted to the Connecticut Valley Hospital in Middletown, Connecticut, a mental hospital, on the basis of a thirty-day certificate of his family physician. His admission note states:

> * * * Current situation appeared to have been precipitated by his impending induction into the Armed Forces.
>
> * * * * * *
>
> On admission, the patient is rather cooperative. He talks coherently and relevantly. There was [sic] no manifestations of psychotic features at this time. His insight and judgment seem to be impaired. Ex. 1–35.

The local board was informed by letter from the hospital, dated September 27th and received on October 2nd, that the defendant was a patient there. The defendant's mother wrote to the State Director of Selective Service for the State of New Hampshire, on September 27th, telling him that her son had been committed to the Connecticut Valley Hospital on September 17th. She stated in her letter:

> My son was convinced by the urging of Dr. Scherr, his father and myself,

that treatment was a necessity. He had no choice and agreed not to resist. He was cooperative and did enter voluntarily. Ex. 1–41.

The board also received a letter dated September 27, 1968, from the Reverend Francis J. Ford informing them that his nephew, Kevin Ford, was a patient at the Connecticut Valley Mental Hospital. No further communication of any kind was received, either by the local draft board or Selective Service Headquarters, from the defendant or any members of his family. The defendant was discharged from the hospital on October 21, 1968.

On October 21st, the executive secretary of the local board wrote to a Mr. French, a case worker at the hospital, asking about the status of the defendant. There was no reply to this letter and, on December 6th, she wrote again to the Connecticut Valley Hospital inquiring as to the current status of the defendant. On December 20th, a reply was received from the superintendent of the hospital stating that the defendant had been discharged on October 21st. The local board then requested the superintendent to submit a summary of the hospital findings, so that it could give the defendant's case proper consideration. The superintendent complied with this request by letter received on January 13, 1969. This letter contained the following:

> On admission to this hospital the patient, who appeared about his stated age, was described as alert, calm, cooperative, and showed no evidence of psychosis or acute, depressive symptoms. * * *
>
> During the patient's hospitalization his behavior initially was somewhat withdrawn, which was characterized by moodiness. He was, however, generally cooperative, and socialized well with patients and the Staff. There was no evidence of bizarre behavior, thinking disorder, or psychotic symp-

---

1. The form is not clear as to whether the date is August 1st or August 11th. It has been stipulated that the information given in the form was in error and that, actually, sentence was suspended by the district court and the defendant put on probation for a year.

toms. On October 19, 1968 we felt our examination and observation of the patient was completed, and he was discharged to his own care, signing out to his mother's residence, * * *

*Impression:* Personality Disorder, Passive-Aggressive.

Drug Dependence, and other sociopathic behavior.

Ex. 1–62.

### 1. *The Question of Intent*

The main defense is that the Government has not proven beyond a reasonable doubt that the defendant willfully and knowingly refused to report for induction.

 It is fundamental that "[t]he Government must establish knowledge of the legal obligation and voluntary action or omission with the purpose of failing to perform such obligation." United States v. Rabb, 394 F.2d 230, 233 (3rd Cir. 1968). Based upon the record before me, I have no difficulty in finding that the defendant, willfully, intentionally, and with full knowledge of his obligations, refused to submit for induction into the Armed Services. This was proven beyond a reasonable doubt. The defendant certainly cannot plead either ignorance or unfamiliarity with the induction process. This was the third time that the defendant had been ordered to report for induction. There is no evidence that would raise even an inference that the defendant did not understand what he was doing on September 17th or that he was under the influence of drugs to such an extent that immediate hospitalization was a medical necessity. To the contrary, the admission note and report from the hospital superintendent establish clearly that the defendant was calm and cooperative and in full possession of all of his faculties. While the admission note uses the term "emergency," the only emergency that the defendant faced on September 17th was created by his desire to avoid induction on the next day. The admission note clearly states: "Current situa-

tion appeared to have been precipitated by his impending induction into the Armed Forces." Ex. 1–35.

Since there was no testimony by the defendant's family physician, nor any of the doctors from the Connecticut Valley Hospital relative to his mental condition on or before September 17th, the Court must base its decision on the information contained in the defendant's Selective Service file. Ex. 1.

The defendant should have known at the time of his discharge from the hospital that he was under a continuing duty to report for induction into the Armed Services or, must have known at the very least, that he had a duty to inform the draft board of his status. Yet, neither the defendant, nor any member of his family, contacted the local draft board after the defendant's discharge from the mental hospital on October 21st. The Court realizes that the defendant is not being charged with failure to keep the draft board informed of his status, but his failure to contact the draft board after his release from the hospital has a definite bearing on the question of his intent.

While the Court finds it difficult to understand why the Armed Services would want to induct a man with the record of this defendant, there is no question that the defendant willfully, knowingly, and with intent to do so, refused induction into the Armed Services.

The Court now considers the other grounds raised by the defendant in support of his motion for acquittal.

### 2. *Order of Call*

 The defendant claims that he was deprived of due process of law and his induction order was invalid because he was not ordered to report for induction in the proper order as required by 32 C.F.R. § 1631.7(a). Defense counsel has done an assiduous job in presenting the issue of "order of call." The Court has examined the record carefully, including the so-called "102 Book" and the files of those registrants whom the defend-

ant claimed should have been called before him. There is no evidence to suggest that the defendant was either negligently or deliberately called in a manner contrary to the regulations.

### 3. *Denial of Right of Appeal*

██ The defendant next complains that he was deprived of due process of law because the local board and the New Hampshire State Headquarters, Selective Service System, did not advise him that he had a right to appeal to the Surgeon General from the finding that he was medically acceptable for military service. This contention overlooks the fact that the defendant, after being given both a medical and psychiatric examination, was found acceptable. There is no specific Selective Service regulation which gives a registrant the right to appeal to the Surgeon General from a finding of medical qualification by the AFEES' examining physician. In the final analysis, the Armed Forces, not the local draft board or the Selective Service System, makes, and must make, the decision as to whether or not an inductee is physically and mentally qualified to serve.[2]

### 4. *Failure to Consider Evidence Relative to Psychiatric Condition*

██ The defendant contends that he was deprived of due process of law because the local board, in violation of 32 C.F.R. § 1625.2 did not consider the evidence of psychiatric difficulties alleged in the three letters that it received on June 17th and July 17th. Ex. 1–17, 18, and 21. In the first place, Regulation 32 C.F.R. § 1625.2 says that the local board *may* reopen and consider anew. The regulation is not mandatory. More important, however, is the point that the local board made these letters part of the defendant's file, which was forwarded to AFEES and the defendant was given a special psychiatric examination. There was no violation of due process.

### 5. *Classification Not Properly Determined*

██ The defendant claims that he was deprived of due process because his classification was not considered and voted upon by the local board at a formal meeting. It is clear that the defendant's classification was voted upon by the local board at a formal meeting. This was a two hour meeting at which the classification of five hundred and twenty-one registrants was decided. The real thrust of the defendant's claim is that neither the defendant's classification, nor any of the other five hundred and twenty registrants classified at that meeting, could be properly considered in two hours. The executive secretary explained that the great majority of classifications were routine and needed no extensive deliberation. The Court must face up to the fact that Local Draft Board No. 9, like all other draft boards, is composed of volunteers who, no matter how conscientious, must rely in great measure on the experience of the one paid worker, the executive secretary. Moreover, the face sheet of the minutes of the meeting at which the defendant was classified shows that the board did carefully consider classification problems in special cases. Ex. 3. At the time of his classification, the defendant's status presented no special problem. The Court rules that there was no deprivation of due process of law because the defendant, along with five hundred and twenty registrants, was classified in a two hour period.

### 6. *Induction Order Not Properly Signed*

██ Defendant complains that his order to report for induction was invalid because it was not signed by a member of the local board or the clerk as required by 32 C.F.R. § 1606.24 and § 1606.51. The short answer to this contention is the executive secretary's testimony that, although she did not specifically recall signing this particular induction order, she always signed the induction orders.

---

2. See 32 C.F.R. §§ 1628.1, 1628.2, 1628.4, and 1628.10.

Significantly, the original induction order which was received by the defendant was not offered in evidence and all that the Court has to go on is the testimony of the executive secretary and the copy of the induction order in the file (Ex. 1–7), which does not bear any signature. This copy, however, is a machine copy, and it does not necessarily follow from the fact that the copy lacks a signature that the original was defective in this regard.

 Furthermore, under the facts of this case, the failure of the induction order to be signed is not violative of due process because such failure did not deprive the defendant of any of his rights, except possibly the right to delay induction, if this can properly be termed a right. And if anything is clear in this case, it is that the defendant was given the full benefit of delay of induction.

### 7. *Army Regulations*

Defendant further asserts that he was deprived of due process because he was found acceptable for induction when he was under civil restraint in violation of Army Regulations 601–70, par. 3–9. The defendant misconstrues the purpose and effect of these regulations. They are not designed for the benefit or the protection of an inductee and do not apply to this situation. The Army regulations were inapplicable because, although the information received from the Newmarket District Court was incorrect in stating that the defendant was free from civil restraint, it was the only authoritative information that AFEES had, and the finding of acceptability was, therefore, valid and binding on the defendant. If the defendant had been inducted prior to the expiration of his probationary period, then the conflict would have been between the Army and the Civil Court, not between the defendant and the Selective Service System.

The other three defenses raised require no discussion and they were neither argued nor briefed. These defenses were that the induction order was invalid because peacetime conscription is unconstitutional, that the conscription is for an illegal war, and that the Selective Service Act inherently violates due process and equal protection of the law. Suffice it to say that these are political issues, not judicial issues, and the Court rules that the defendant has no standing to raise them.

The defendant is found guilty as charged.

So ordered.