**UNITED STATES of America**

v.

**Stephan WOLOSZCZUK.**

**Crim. No. 71–24–G.**

United States District Court,
D. Massachusetts.

July 2, 1971.

Frederic Kellogg, Asst. U. S. Atty., for Government.

Charles Donelan, Worcester, Mass., for defendant.

MEMORANDUM OF DECISION

GARRITY, District Judge.

Defendant was indicted for his unlawful, knowing and wilful failure to comply with an order of his local draft board to report to his local board at Worcester, Massachusetts, for instructions to proceed to the Massachusetts General Hospital in Boston, Massachusetts, for employment in civilian work contributing to the maintenance of the national health, safety and interest on or about May 1, 1969, in violation of 50 U.S.C. App. § 462(a). The case was tried jury-waived on May 27, 1971. The evidence consisted of defendant's Selective Service Record, several exhibits concerning the proceeding before the Massachusetts State Appeal Board and the testimony of the Clerk of the Appeal Board. At the conclusion of the evidence, oral argument was held on defendant's motion for judgment of acquittal; and the court took the matter under advisement. On the basis of the evidence adduced at the trial, oral argument and memoranda of law filed by the parties, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. The defendant was born on September 19, 1949 and registered with the Selective Service System, Local Board No. 38 in Worcester, Massachusetts, on September 25, 1967. On October 11, 1967 defendant filed with the Local Board SSS Form No. 100, Classification Questionnaire, in which he stated that he would be starting November 1, 1967 "devoting my time to the full-time ministry" in the Jehovah's Witness faith. He also claimed to be a conscientious objector and requested the Board to furnish SSS Form No. 150, the Special Form for Conscientious Objector.

2. On October 20 defendant filed SSS Form No. 150; in this form he again stated that he would be entering the full-time ministry as of November 1, 1967 and would be devoting most of his time to bible study and preaching. On October 30 the Board classified defendant I–A.

3. On November 7, 1967 the Board received a letter from defendant "requesting a personal appearance so as to appeal my classification of 1–A as of October 31, 1967." On November 30 the Board received a letter from the Watchtower Bible and Tract Society stating that defendant had been appointed a Vacation Pioneer for the period November 1 to November 30, 1967. A personal appearance was scheduled for December 5.

4. The Board's summary of the December 5 hearing reads in part as follows:

Mr. Woloszczyuk stated he wished a 4–D Classification as a minister, as he is actively working in the Ministry of Jehovah's witnesses—this ministry involves going house to house talking to people, attending meetings, home study, conducting house bible studies. He stated he has been working in the ministry full time since November 1, 1967—he attends meetings (five a week) and studies the bible at Kingdom Hall-Jehovah's Witnesses, gives student talks, and learns to better present God's message. He conducts bible studies, and goes from house to house and will talk to anyone who will listen to his message.

Registrant stated he regularly attends and participates in all meetings, studies and discusses the bible with the other members of his congregation. He stated he was ordained into the Ministry on Oct. 27, 1962, when he publicly declared himself a minister. He is now engaged actively in the ministry, working over 100 hours a month —house to house calling on people.

Last year he attended Trade School as a cabinet maker, and worked for Gagner Woodworking when he graduated; all this time he was working in the Ministry on a part-time basis. He gave up his position at Gagner to work full-time in the Ministry. He stated he does not get paid for his Ministry work—he does it freely, as we receive freely, we give freely. He is working 4 nites a week—five or six hours a night—at Nick's Grille. He earns approximately $35.00 a week in this manner for food, clothing rent etc. He shares an apartment with another full-time minister on Tower St.

Every morning he stated, he actively engages in his ministry by making house to house calls, sometimes with other full-time ministers, and he attends meetings regularly. At the Friday meeting, he goes up to the platform and instructs from the platform. He devotes all his time to the ministry, house to house calls, field work— everything that constitutes a full-time minister. He stated that God told his followers to Go Forth and preach among the nations, and that is one of the duties of a Jehovah Witness.

Registrant stated he expects his Dec. 1–31 Pioneer Appointment letter any day now. His appointments right now will be monthly. Eventually he hopes he will receive a 6 month appointment-extension. Eventually he also hopes to be a regular pioneer, which would mean spending 100 hours a month making house to house calls, and does not include meetings, etc. in the 100 hours.

At the end of the hearing, the Board voted to retain defendant in I–A, and mailed to him his classification card and notice of right to appeal on December 6.

5. On January 2, 1968 the Board received from defendant a copy of his appointment as a Vacation Pioneer for the period ending December 31, 1967, and a notice of appeal from the decision of December 5. On January 11 three letters from representatives of the Jehovah's Witnesses in support of defendant's claim for a ministerial exemption, to-

gether with a notice of defendant's appointment as a Vacation Pioneer for the four-month period through April 30, 1968, arrived at the Local Board office. On January 12 the Executive Secretary transmitted defendant's file, including the above documents, to the Massachusetts State Appeal Board.

6. During January, 1968, on a date which does not appear in the file, defendant had an automobile accident which resulted in his incurring liabilities and discontinuing his full-time ministry. He did not report this to the Local Board until February 26, 1968, when he wrote as follows:

> This is to let you know that due to financial difficulties encountered as a result of an automobile accident that I had in January '68, I am unable to continue in the full-time ministry and have obtained full-time employment to defray these expenses. However, I am still an active member of the Worc. South Unit of Jehovah's Witnesses and am still a preacher of the 'Good news of the Kingdom'. If circumstances permit, I shall wish to resume the pioneer ministry in the future.

7. The Appeal Board, which has five members, meets approximately once each month, generally considering 100 to 300 cases at each meeting. The general practice is for the clerk to group the cases by category, e. g., requests for II–S are grouped together, and to present the cases to the chairman with a short synopsis for each case. While the Appeal Board gives less attention to frivolous cases, e. g., an appeal for the purpose of delay so that a registrant might enlist, it gives more careful attention to cases of substance. In cases involving claims for conscientious objector or ministerial status, each Appeal Board member reads the folder prior to discussion and decision.

8. The Appeal Board convened on February 16, 1968. There were 235 cases before it, including defendant's appeal from his I–A classification.[1] The meeting lasted 3½ hours. Defendant's file was given to the members of the Appeal Board for review with the following synopsis prepared by the clerk:

> "WOLOSZCZUK, Stephan L. B. #38 (Worcester) #19–38–49–135 1–A to 4–D (Reg.) Age 18. DOB 9/19/49. Reg. filed Form 150 and appeals for 4–D Class. He is a Jehovah's Witness. He is presently a VACATION (Not REGULAR) PIONEER until Apr. 30, 1968. (Elig. for 1–O but not 4–D)."

By vote of 3–0 the Appeal Board placed the registrant in I–O, i. e., conscientious objector status.[2] On March 15, 1968 the Local Board received a notice of the decision from the Appeal Board and duly notified defendant.

9. In December, 1968, defendant was found physically acceptable. On January 20, 1969, on a special form report for Class I–O registrants, defendant reported that he was the supervisor and manager of the dairy department of a supermarket, earning $75 per week, and stated, "I am presently attending Kingdom Hall of Jehovah's Witnesses in order to become more fully qualified in the preaching work." In response to a form request that he list three types of civilian work which he would do in lieu of military duty, defendant stated, "I am prepared to work as a minister to preach the 'good news of the Kingdom' under the direction of the Watchtower Bible & Tract Society of Brooklyn, New York, a non-profit religious organization."

10. On January 23, 1969, at the Local Board's request, defendant appeared before it and answered questions regarding his refusal to designate three types of acceptable civilian work. A rough transcript of the colloquy includes the following:

> You preach full time?
>
> Do not preach full time; work to support myself. I do this in order to be

---

1. Of the 235 cases considered, 42 were reclassified. Of these, 7 were placed in I–O and one was placed in IV–D.

2. The clerk had no independent memory of the amount of time the Appeal Board spent considering defendant's case.

of no burden on the State; we are self supporting law abiding people furthering the Kingdom.

You are not consistent—your statements are not consistent; you could be working and preaching at one of the institutions.

If I were not working and supporting myself full time.

If I work in a hospital, I would be putting myself into the military; I am working now full time in order to pay bills; incurred debts and as soon as these debts are paid expect to go into full ministry.

\* \* \* \* \* \*

I asked for a 4–D classification because I am a minister that is a classification I should have received. Why it was not given to me only the Local Board members know.

There are different rules that spell out a 4–D classification—one is work full time as a minister.

I was unable to do that; I was in an auto accident and when all those bills are paid hope to be a full time minister.

On January 29, the Local Board wrote to defendant suggesting three hospitals in which he might work. When he did not reply, the Board asked him to appear before it again. At the next meeting, on March 10, 1969, defendant stated that he would not comply with an order to report for civilian work, and the Board voted to seek authority from national selective service headquarters to issue an order assigning defendant to hospital work at the Massachusetts General Hospital. At the March 10 meeting, defendant stated that he expected to resume full-time ministry in one or two more months and, according to the rough transcript, inquired,

"How about a student's classification? I believe I should have that for I go to Kingdom Hall five evenings a week for instructions. Wouldn't that entitle me to a student's deferment?"

11. After receiving approval from Washington, the Local Board by order dated April 18, 1969, directed defendant to report on May 1 to receive instructions to proceed to Massachusetts General Hospital, Boston, Massachusetts, to perform civilian work contributing to the maintenance of national health, safety or interest. Defendant knowingly failed to report to the Local Board as ordered to receive instructions, and knowingly failed to proceed and report to Massachusetts General Hospital, Boston, Massachusetts, for employment on May 1, 1969 and to this date has failed to report as ordered.

## Conclusions of Law

Defendant's motion for judgment of acquittal is based on the alleged illegality of the order to report for civilian work which he admittedly failed to obey. In support of this motion, defendant makes five arguments. The court will discuss them *in seriatim.*

■ First, defendant contends that the Local Board's failure to comply with 32 C.F.R. 1626.14, which requires it to transmit to the Appeal Board a registrant's file within "five days after the period for taking an appeal has elapsed," rendered the subsequent order to report unlawful. Defendant was sent a Notice of Classification on December 6 and under 32 C.F.R. 1626.2(c) (1) he had 30 days from that date, i. e., until January 5, in which to appeal. (He did appeal on January 2.) Thus, under 32 C.F.R. 1626.14 the Local Board was required to send defendant's file to the Appeal Board by January 10, and its failure to send the file until January 12 was violative of that regulation. However, defendant has shown no possible prejudice to him by virtue of this dereliction and consequently the induction order is not thereby rendered unlawful.

■ Second, defendant argues that the Appeal Board's failure to spend an adequate amount of time considering his case on February 16 rendered the induction order illegal. On February 16 the Appeal Board considered 235 appeals in three and a half hours, an average of 53.6 seconds per case. However, its clerk

testified that many of these cases were frivolous and that the chairman and other Board members gave individual and careful attention to conscientious objector claims and claims for ministerial exemption. Although she could not remember the amount of time spent on defendant's case, his appeal concerned both conscientious objector and ministerial claims; and, in fact, the Appeal Board did revise defendant's classification from I–A to I–O. Under these circumstances the court cannot hold that the Appeal Board failed to spend an adequate amount of time considering defendant's case. See United States v. Ford, D. N.H., 1969, 306 F.Supp. 42, 47, reversed on other grounds, 1 Cir., 1970, 431 F.2d 1310.

■ Third, defendant complains of the Local Board's failure to reopen his case on January 11 when it received three letters from representatives of the Jehovah's Witnesses in support of his claim for a ministerial exemption and a notice of his further appointment as a Vacation Pioneer for the four-month period through April 30, 1968. Under United States v. Ford, 1 Cir., 1970, 431 F.2d 1310, the executive secretary should have transmitted these documents to the Local Board for a decision on whether or not to reopen defendant's case before sending defendant's file to the Appeal Board. See United States v. Brown, 3 Cir., 1971, 436 F.2d 1317, 1319. How-

ever, the court holds that this error of the executive secretary was harmless since the information contained in the January 11 mailing was merely confirmatory of information already in the file and would not have required the Local Board to reopen. See United States v. Hawver, 7 Cir., 1971, 437 F.2d 850, 851.

■ Fourth, defendant contends that there was no basis in fact for the Local Board's refusal to grant him a IV–D ministerial exemption on December 5, 1967. As of that time defendant was a "Vacation Pioneer" who spent over 100 hours per month making house to house calls. In addition, he spent additional time going to meetings five times a week. At the Friday meeting, he spoke from the platform. He had been ordained as a minister in the Jehovah's Witness faith on October 27, 1962 and had on November 1, 1967 begun his full-time ministry as a Vacation Pioneer. He received no compensation for his efforts and held a part-time job at a restaurant earning about $35 per week for subsistence. There is no contradictory evidence in the file which the board had before it, and we must assume that the Local Board determined only that this uncontradicted showing did not qualify defendant for a ministerial exemption under 50 U.S.C. App. § 466(g).[3] See Dickinson v. United States, 1953, 346 U.S. 389, 396, 74 S.Ct. 152, 98

3. 50 U.S.C. App. § 466(g) contains the following definitions:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does

L.Ed. 132, and United States v. Stewart, 4 Cir., 1963, 322 F.2d 592, 594–595.

In United States v. Dillon, D. Oreg., 1968, 294 F.Supp. 38, 39–40, three criteria were deemed relevant to a determination of whether or not a Jehovah's Witness is entitled to a ministerial exemption. "A Jehovah's Witness is entitled to a ministerial exemption if (1) the ministry is his vocation rather than his avocation; (2) religious affairs occupy a substantial part of his time and are carried on with regularity; and (3) he stands in the relation of a minister to a congregation or in an equivalent relation as a recognized leader of a group of lesser members of his faith." (Cf. the similar two-pronged test set forth in United States v. Hull, 4 Cir., 1968, 391 F.2d 257, 258.) The government concedes that defendant was qualified under the first two standards but contends that there was a basis in fact for the Local Board's decision of December 5 since defendant had not demonstrated a position of leadership within the church.

The leadership criterion relied on by the government is certainly valid in light of the express congressional intent in the provision of a ministerial exemption. In the Senate Report accompanying the 1948 Act, the ministerial exemption was claimed to be "a narrow one, intended for the leaders of the various religious faiths and not for the members generally." S.Rep.No.1268. As the Supreme Court said in Dickinson, 346 U.S. at 394, 395, 74 S.Ct. at 156, "Certainly all members of a religious organization or sect are not entitled to the exemption by reason of their membership, even though in their belief each is a minister. On the other hand, a legitimate minister cannot be, for the purposes of the Act, unfrocked simply because all the members of his sect base an exemption claim on the dogma of its faith. That would leave a congregation without a cleric."

Having in mind the narrow scope of judicial review of local board determina-

tions of classification, this court cannot hold that there was no basis in fact for the Local Board's December 5 decision. The status of a registrant in the church hierarchy may be considered as one factor, albeit not conclusive, in a local board's determination, United States v. Bittinger, 4 Cir., 1970, 434 F.2d 49, 50–51, and defendant was a Vacation Pioneer not a Regular Pioneer. In addition, defendant first undertook his full-time work as a Vacation Pioneer on November 1, 1967 and, in view of his youth, the local board could have considered that his departure would not leave "a congregation without a cleric."

Defendant's fifth argument concerns the application of an erroneous standard of law to defendant's case by the Massachusetts State Appeal Board. At the trial, the clerk's synopsis was introduced; this synopsis reads in part that defendant "is presently a VACATION (Not REGULAR) PIONEER until Apr. 30, 1968 (Elig. for 1–O but not 4–D)." In addition, the clerk testified that in her understanding only a Regular Pioneer was eligible for a ministerial exemption. Defendant argues that instead of determining whether defendant was entitled to a ministerial exemption on the basis of his actual duties and functions, as it was obliged to do, the Appeal Board disqualified defendant from IV–D status solely because he had not achieved Regular Pioneer status, thereby applying an incorrect legal standard to defendant's case and invalidating the subsequent order to report for civilian work. "Although the scope of judicial review of selective service classifications is exceedingly narrow, it is clear that a classification made on the basis of an erroneous view of law falls within its purview." United States v. Tichenor, 6 Cir., 1968, 403 F.2d 986, 988. Under the regulations, a registrant who takes an appeal from a local board decision is entitled to a de novo review of his case by the Appeal Board. "The appeal board shall

not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship

as embodied in the creed or principles of his church, sect, or organization."

classify the registrant giving consideration to the various classes in the same manner in which the local board gives consideration thereto when it classifies a registrant." 32 C.F.R. 1626.26(a). Thus, the scope of judicial review of appeal board decisions is identical to review of local board decisions.

The question, therefore, is whether the clerk's erroneous synopsis indicates a similarly erroneous basis for the Appeal Board's action, and whether this, in turn, counters the presumption of regularity attaching to administrative decisions. Eagles v. United States ex rel. Horowitz, 1946, 329 U.S. 317, 323, 67 S.Ct. 320, 91 L.Ed. 318; Wells v. United States, 5 Cir., 1946, 158 F.2d 932, 935–936. In Sicurella v. United States, 1955, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436, the Supreme Court invalidated an Appeal Board ruling denying conscientious objector status where the exact grounds for decision were impossible to determine and where the Board had before it, under then-existing procedures, a Justice Department recommendation based on illegal grounds calling for the action ultimately taken. *Id.* at 392, 75 S.Ct. 403, 99 L.Ed. 436. Here, as in *Sicurella*, the basis of the Board's determination is unknown, and similar logic may dictate a finding that, since the Board members may have limited themselves to the single option outlined in the synopsis, the result reached is invalid.

The impact of a notation by a clerk, however, absent a showing of unusual reliance by Board members upon the clerk's preliminary analysis of a registrant's file, would appear substantially less than the impact of findings made by the Department of Justice after extensive investigation and a hearing.[4] Indeed, the clerk testified at the hearing

that, regardless of her indication of eligibility, each member customarily reads the folder of a registrant seeking IV–D classification prior to discussing it and voting upon the issue presented. Weighing against this testimony, however, is the fact, already stated in this memorandum, of the sheer volume of appeals handled in a given session. For the Appeal Board members to free sufficient time to carefully consider the more substantial appeals, it would appear that they must accept without question the clerk's prior determination as to which appeals are utterly lacking in merit. If this assumption is correct, it is not unreasonable to surmise that the members would accept the clerk's analysis of available options, especially where, as here, a I–O option was available and granted.

The court believes, however, that even if an erroneous legal standard were applied to defendant's case by the Appeal Board, the error was harmless in the light of the changed circumstances of the defendant between his classification by the Local Board on December 5, 1967 and the decision on appeal on February 16, 1968. In January 1968 defendant was in an automobile accident and incurred liabilities which prevented him from continuing what he claimed to be a full-time ministry. Had these developments been disclosed by the defendant to the Local Board and reported to the Appeal Board, as they probably should have been, there would have been no conceivable basis for the Appeal Board classifying him IV–D.[5] There is nothing whatever in the defendant's file indicating that he served as a regular minister as defined by 50 U.S.C. App. § 466(g) (3) after his automobile accident in January 1968. His appointment as a Vacation Pioneer was not renewed. In January

---

4. The likely effect upon the decision of an Appeal Board of a misconception of applicable law by its clerk may be contrasted with that of a state manpower officer whose erroneous opinion was presumed to have been shared by an Appeal Board in United States v. Kidson, D. N.H., 1970, 315 F.Supp. 132, 136.

5. Alternatively stated, if it be assumed that the Appeal Board should have classified defendant IV–D and did so, it would have been the responsibility and duty of the Local Board to review his file and deny him that classification after being advised on February 26, 1968 of the consequences of his January automobile accident.

**704**

1969 he told the Local Board that he was working full-time to earn money with which to discharge debts incurred in the automobile accident a year before. Indeed, on March 10, 1969 he suggested to the Local Board that he might be eligible for a student deferment.

Accordingly, defendant's motion for judgment of acquittal is denied; and the court finds that the defendant has been proved guilty beyond a reasonable doubt of the offense charged in the indictment.